

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 7, 2022

**BY ECF**
The Honorable Colleen McMahon
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re:** *United States v. Michael J. Fox*, **21 Cr. 182 (CM)**

Dear Judge McMahon:

    The Government respectfully submits this letter in advance of sentencing in the above-referenced case, currently scheduled for June 14, 2022, at 11:00 a.m. For the reasons explained below, the Stipulated Guidelines Sentence of 120 months' imprisonment, as correctly calculated in the Presentence Investigation Report (the "PSR"), would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **A. Offense Conduct**

    On or about October 22, 2020, the defendant intentionally shot at three individuals (the "Victims") hanging out in the lobby of 980 Trinity Avenue (the "Building") in the Bronx, New York. One of the Victims was shot in the leg.[1] This shooting is captured on video surveillance. Still shots from that surveillance, including those shown below, show the defendant, wearing a blue hoodie, approach the Building, take out a gun, shoot into the lobby, and then run away. Other video surveillance from inside the Building shows the three Victims scatter when the shots are fired. Finally, there is video surveillance of the defendant jumping into a White Impala car (the "Impala") immediately after the shooting and driving away.

---

[1] The police spoke to the injured Victim, but he was not cooperative. He has not been cooperative in this investigation.





Immediately after the shooting, officers from the New York City Police Department (the "NYPD") responded to the scene of the crime, where they recovered a shell casing and deformed bullet from the lobby of the Building.

Several days after the shooting, on or about October 28, 2020, NYPD officers stopped the Impala, which the officers knew had been involved in the shooting. There were two individuals in the car, the driver and the defendant, who was sitting in the front passenger seat. Immediately upon being stopped, the driver told the officers that the defendant had a gun under the passenger seat. The officers took the defendant out of the car and recovered a firearm from under the passenger seat. Both individuals in the car were arrested. At the time of his arrest, the defendant was wearing camouflage pants that matched the pants that the shooter was wearing the night of the shooting. Based on ballistics analysis, the NYPD learned that the shell casing and deformed bullet that had been recovered from the shooting were discharged from the same firearm that was recovered from under the passenger seat of the Impala.

### B. The Defendant's Criminal History

The defendant has multiple prior convictions, including a felony conviction. First, on or about July 22, 2010, he pled guilty to criminal mischief, a misdemeanor, in violation of New York Penal Law Section 145.00, and was sentenced to 30 days' imprisonment. Second, on or about February 27, 2012, he pled guilty to disorderly conduct for creating a hazardous or physically offensive condition, a violation, in violation of New York Penal Law Section 240.20, and was sentenced to a conditional discharge.

More significantly, on or about June 7, 2012, he pled guilty to attempted robbery in the second degree, a felony, in violation of New York Penal Law Section 160.10, and on or about July 12, 2012, he was sentenced to a term of imprisonment of three years, followed by three years' post-release supervision. In that case, he was discharged on or about April 14, 2015, and placed on supervision, which he violated numerous times, including by committing other crimes. The defendant's first violation was on or about September 3, 2015. As a result of that violation, he was incarcerated again for more than 10 months. He was released on or about July 14, 2016, and placed back on supervision, which he proceeded to violate yet again. As a result of that second violation, starting on or about September 20, 2016, he was incarcerated for another 10 months. He was discharged and placed back on parole on or about August 3, 2017. Less than a year later, on or about July 9, 2018, he violated his supervision for a third time, and was incarcerated for about one month, until on or about August 3, 2018, when his term of supervision expired. In the meantime, on or about January 24, 2018, he pled guilty to criminal possession of stolen property in the fifth degree, a misdemeanor, in violation of New York Penal Law Section 165.40, and on or about June 18, 2018, he was sentenced to a term of imprisonment of six months for that offense. Finally, on or about January 3, 2019, the defendant pled guilty to unauthorized use of a vehicle, a misdemeanor, in violation of New York Penal Law Section 165.05, and was sentenced to a term of 60 days imprisonment and an order of protection was issued against him. In addition, according to his criminal history records, at the time of the offense in this case, the defendant had at least two

orders of protection in place against him. One of those orders expired in December 2020, but the other one does not expire until January 2024.[2]

The defendant's history while incarcerated is also troubling. While incarcerated for his prior felony conviction and his related violations of the terms of his post-release supervision for that conviction, the defendant accumulated a total of 29 disciplinary sanctions, between November 28, 2012, and July 22, 2018. (PSR ¶ 38.) According to the PSR, those sanctions included violent conduct, assault on staff members, damaging property, harassment, gang-related sanctions, and fighting.

### C. Procedural History

On or about March 16, 2021, a grand jury in this District returned a two-count Indictment against the defendant, charging him with being a felon in possession of ammunition (Count One) and of a firearm (Count Two), in violation of Title 18, United States Code, Section 922(g)(1). (Dkt. No. 1.) That same day, the defendant was transferred from state to federal custody on those charges, presented in federal court, and detained on consent. On or about January 19, 2022, the defendant pled guilty in magistrate court to Count One of the Indictment, pursuant to a plea agreement with the Government. (*See* Dkt. No. 24.) On or about January 26, 2022, this Court accepted the defendant's guilty plea. (Dkt. No. 26.)

On or about April 12, 2022, the U.S. Probation Office ("Probation") completed the PSR, which concurred with the Guidelines calculation set forth in the plea agreement, which determined that the defendant's applicable offense level was 30 and that he was in criminal history category IV. Accordingly, the defendant's Guidelines range would be 135 to 168 months' imprisonment. Because, however, the statutory maximum sentence is 120 months' imprisonment, the defendant's Stipulated Guidelines Sentence in the plea agreement, and in the PSR, is 120 months' imprisonment. Probation recommends a below-Guidelines sentence of 78 months' imprisonment, followed by three years' supervised release.

The defendant did not file a sentencing submission.

### D. A Guidelines Sentence Is Warranted In This Case

1. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, a court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the history and characteristics of the

---

[2] The PSR, however, only references two expired orders of protection. (PSR ¶ 44.)

defendant, and the need to adequately deter criminal conduct, promote respect for the law, and protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a).

2. Discussion

A Guidelines sentence is necessary in this case based on the nature, circumstances, and seriousness of the offense, the defendant's history and characteristics, and the need for the sentence imposed to provide just punishment, to afford adequate deterrence to this defendant and others, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). All these considerations weigh in favor of the Stipulated Guidelines Sentence.

*First*, the Stipulated Guidelines Sentence is necessary to reflect the seriousness of the defendant's offense, and to provide just punishment. On October 22, 2020, the defendant made the life-threatening decision to run after and shoot directly at the Victims. Fortunately, no one was killed, but one of the Victims was injured. The defendant's heedless actions posed a great risk not only to the Victims but to anyone else in the vicinity of the Building. Incapacitating violent offenders like the defendant who are willing to commit serious acts of gun violence and put others' lives and the safety of communities at risk is a concern of paramount importance. The circumstances of the instant offense make clear that the defendant is both violent and dangerous and is willing to act with little regard for the lives and safety of others.

*Second*, the defendant's history and characteristics, and the need to afford adequate deterrence to the defendant and others similarly situated, support a Guidelines sentence. The defendant was previously convicted of a serious felony—attempted robbery in the second degree, and sentenced to a term of imprisonment of three years, followed by three years' post-release supervision. Despite serving that lengthy sentence, as well as additional terms of imprisonment for other crimes and violations while on post-release supervision, the defendant has committed another serious—and this time, violent—crime. Clearly, the defendant's prior prison sentences did not deter him from committing another crime. Moreover, the fact that the defendant had at least two orders of protection in place against him at the time of this offenses is concerning. The Stipulated Guidelines Sentence will hopefully accomplish what the defendant's prior encounters with the criminal justice system did not: deter the defendant from future crimes, and send a clear message to others who would consider engaging in brazen shootings and perpetuating gun violence in this City that such conduct carries serious consequences.

*Third*, imposing the Stipulated Guidelines Sentence is necessary to protect the public from further crimes by the defendant. The defendant's conduct in this case demonstrates that he is violent, dangerous, quick to escalate, and has little regard for the safety or lives of others. Moreover, there is nothing to suggest that, going forward, the defendant will abide by the terms of his supervised release and stop committing crimes that endanger others and the community. Indeed, while on post-release supervision in a prior case, he violated the terms of that supervision multiple times, including by committing more crimes.

**E. Conclusion**

   For the reasons set forth above, the Government respectfully requests that the Court impose the Stipulated Guidelines Sentence. Such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

               Respectfully submitted,

               DAMIAN WILLIAMS
               United States Attorney

           By: _____
             Sarah L. Kushner
             Assistant United States Attorney
             (212) 637-2676

cc:  Mark Gombiner, Esq. (by ECF)